(No. 39039.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JAMES E. MILLER, Appellant.

*Opinion filed November 19, 1965.*

EMILIE N. WANDERER, of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and KENNETH L. GILLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, James E. Miller, was charged in a two-count indictment with murder and voluntary manslaughter. He was tried by a jury, found guilty of voluntary manslaughter, and sentenced to a term of 14 years to 20 years in the penitentiary. On this appeal defendant contends that his statements were improperly admitted into evidence; that the verdict of the jury was contrary to the evidence; that certain evidence was improperly admitted; that the trial court erred in refusing to instruct on the issue of insanity; and that the sentence was grossly excessive.

It appears from the record that defendant called the Chicago police and reported the death of Louise B. Woolfe, who died of strangulation. Thereafter the police took him into custody and questioned him. Before defendant obtained counsel he gave several inconsistent statements to the police,

in the last of which he said that he had had intercourse with the deceased on prior occasions; that she had always charged him $10 but that on the evening of May 26, 1963, after they had intercourse, she informed him that it would cost him $25. He said that she stated that unless he paid her this amount, she would inform his wife, and defendant, intending to frighten the deceased, put his hands on her throat and shook her. She fell to the ground when he released her, but defendant denied any intention of killing her.

At the trial defendant testified that he slapped the deceased and then grabbed her around the shoulder and shook her and she fell down. He further testified that he left the deceased lying in the parking lot thinking she was still alive and drove around in her car; after he had two or more beers, he returned and put the body in the car intending to take a cab home. Upon feeling her pulse and realizing she was dead, he took her out of the car and called the police.

The first issue is the admissibility of three signed statements of the defendant taken while he was in custody. Defendant moved to suppress the statements prior to trial, contending he was not advised of his right to counsel or of his right to remain silent, was denied sleep, food and water for a long period of time, and was not promptly arraigned.

We have examined the lengthy record on the motion to suppress, and we are convinced that the trial court was correct in finding that the statements were voluntary and the defendant was not mistreated, or denied the right to counsel.

It does appear that defendant was not affirmatively advised of his right to counsel or of his right to remain silent, but this failure alone does not vitiate the statements. It appears from the record that defendant did not request counsel and no attorney was prevented from seeing him as in *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. ed. 977. He was also permitted to talk to his wife. While there is authority to the contrary, we held in *People* v. *Hartgraves*,

31 Ill.2d 375, cert. denied, that the doctrine of *Escobedo* did not require the rejection of a voluntary confession merely because defendant was not affirmatively advised of his right to counsel and his right to remain silent. We, therefore, hold that the statements are not inadmissible on these grounds.

It also appears that the defendant was taken into custody about 2:30 A.M. Saturday morning and was not arraigned until Monday, more than thirty hours after his original arrest. Defendant urges that the failure to promptly arraign him requires a rejection of his statements under the so-called *McNabb-Mallory* rule. This identical contention was urged and thoroughly argued in *People* v. *Kees,* 32 Ill.2d 299, and the court rejected the argument, stating at pages 301-302:

"The charge that the confession was extracted by means of police brutality has been abandoned and is not pursued in this court. Rather, it is first urged upon the basis of the *McNabb* rule, (see: *McNabb* v. *United States,* 318 U.S. 332, 87 L. ed. 819; *Mallory* v. *United States,* 354 U.S. 449, 1 L. ed. 2d 1479,) that the confession was inadmissible in evidence because it was obtained while defendant was being illegally detained. Although it is our opinion the evidence here does not show such unnecessary and unreasonable delay as to have made defendant's detention illegal within the *McNabb* rule, (*cf. People* v. *Jackson,* 23 Ill.2d 274,) it is enough to say that the rule is one of Federal procedure which this court has consistently refused to adopt, (*People* v. *Hall,* 413 Ill. 615; *People* v. *Jackson,* 23 Ill.2d 274; *People* v. *Stacey,* 25 Ill.2d 258; *People* v. *Melquist,* 26 Ill.2d 22; *People* v. *Reader,* 26 Ill.2d 210,) and which, in *Gallegos* v. *Nebraska,* 342 U.S. 55, 63-64, 96 L. ed. 86, 93-94, has been expressly held not to extend to State prosecutions as a requirement of the fourteenth amendment. We find nothing in defendant's arguments, or in his arduous suggestion that *Gallegos* has been overruled by implication,

to cause us to now adopt the rule or to conclude that due process requires its adoption."

We therefore conclude that the statements of the defendant are voluntary and properly admitted into evidence.

Defendant also contends that the defense of insanity at the time of the offense was properly raised, and the State failed to prove he was sane at that time.

Defendant produced the testimony of a clinical psychologist and a psychiatrist who examined defendant prior to trial. We have carefully reviewed their testimony and it indicates that defendant has a "personality disorder," "forms unrealistic judgments," and is "unable to evaluate situations that face him."

The Criminal Code of 1961 delineates the requirements for the defense of insanity as follows:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

"(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct." Ill. Rev. Stat. 1963, chap. 38, par. 6—2.

We think that the evidence offered falls far short of establishing a "mental disease or mental defect" within the meaning of the act. (See Committee Comments to section 6—2(b), Smith-Hurd Ill. Anno. Stat., 1961, chap. 38, pp. 217-218.) In addition, the testimony of defendant at the trial, and his prior statements, effectively rebut any claim of insanity at the time of the crime, but on the contrary indicate he acted rationally.

Defendant also contends that the court erred in refusing certain of his instructions relating to the defense of insanity. Defendant has abstracted only the refused instructions and four of the fifteen given instructions. In his brief

and argument the refused instructions are not set forth nor is their propriety pointed out. It is well settled that error cannot be predicated on refused instructions when all of the pertinent instructions given and refused are not abstracted. (*People* v. *Robinson,* 27 Ill.2d 289; *People* v. *Todaro,* 14 Ill.2d 594.) We also feel that the evidence does not support the defendant's tendered instructions.

Defendant further claims error in the admission of evidence concerning the reputation of the deceased and concerning a vaginal laceration of the deceased.

It appears from the record that the testimony regarding the reputation of the deceased lacked proper foundation and the evidence of the deceased's vaginal laceration was not connected up with any act of the defendant. If, therefore, the defendant had been convicted of murder rather than voluntary manslaughter, the admission of this evidence might have compelled a reversal. However, it appears that the jury in this case rejected the State's contention that this was a deliberate, wanton murder and accepted the defendant's contention that the deceased died as a result of an impulsive provoked attack by defendant. We, therefore, cannot see that the admission of this evidence, serving only to substantiate the State's theory of murder, prejudiced the defendant.

From the entire record we find nothing in the conduct of the trial judge or the State's Attorney that deprived defendant of a fair trial, but, on the contrary, we feel the evidence properly admitted clearly supports the verdict of the jury. The statements of defendant were sufficiently corroborated by his own testimony, his presence at the scene of the crime, and the blood on his clothing.

Defendant finally claims that his sentence was excessive. Where it is contended that the sentence imposed in a particular case is excessive, though within the limits prescribed by the legislature, we will not disturb the sentence unless it clearly appears that the penalty constitutes a substantial de-

parture from the fundamental law and its spirit and purpose, or that it is not proportioned to the nature of the offense. (*People* v. *Smith*, 14 Ill.2d 95.) Upon a review of the entire record we cannot say the trial court abused its discretion in this matter.

We have carefully examined all the alleged errors and believe that defendant was fairly tried and that the evidence substantiates the verdict of the jury and the sentence and judgment of the court. The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*